Michele Anderson-West (9249)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| TIMOTHY J. SCHOLZEN,<br>   Plaintiff,<br><br>v.<br><br>SCHOLZEN PRODUCTS COMPANY d/b/a SCHOLZEN PRODUCTS COMPANY, INC., a Utah,<br><br>   Defendant. | **COMPLAINT**<br>**(JURY DEMAND)**<br><br>Case No. 4:20-cv-00019-DN<br><br>**Judge David Nuffer** |

Timothy J. Scholzen, by and through his undersigned counsel, complains against Defendant Scholzen Products Company d/b/a Scholzen Products Company, Inc. and for causes of action arising out of the Utah Payment of Wages Act, Utah Code Ann. §34-28-1, et. seq. ("UPWA) and the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*  ("FLSA") alleging as follows:

**PARTIES**

1.   Timothy J. Scholzen (hereafter "Plaintiff" or "Mr. Scholzen") is an individual and at all times relevant herein resided in Washington County, State of Utah.

2.   Defendant Scholzen Products Company, Inc. (hereafter "Defendant" or "Scholzen Products") is a Utah for-profit corporation with its office located in Washington County, State of Utah.

3.   Scholzen Products is an enterprise engaged in commerce or in the production of goods for commerce and at all times relevant herein, experienced annual gross sales in excess of $500,000.

1

4. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein, in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1331.

6. The Court has supplemental jurisdiction over Mr. Scholzen's state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

8. The preceding paragraphs are incorporated herein by reference.

9. Scholzen Products is a family owned business and for over 80 years has supplied materials for roofing, fencing, plumbing, pumps, steel, sprinklers and waterworks throughout Southern Utah, Nevada and Arizona.

10. Mr. Scholzen started working for Defendant in 1998 when he was just 10 years old.

11. Through the years, Mr. Scholzen has held various positions and has always met or exceeded Defendant's expectations in every position he held.

12. Currently, Defendant employs Mr. Scholzen as its Waterworks Purchaser and in that capacity, promised to pay Mr. Scholzen a monthly salary of $3,000 per month plus commission based on the number of orders that were written, loaded and delivered for the Waterworks Division along with a 1.5% commission based on the total monthly sales for the Waterworks Division.

13. As Waterworks Purchaser, Mr. Scholzen oversees purchasing and sales for products such as pipes, fittings, sewer drain fittings, and water meters.

14. Mr. Scholzen does not manage or direct the work of any of Defendant's departments or subdivisions.

15. In performing his job duties as the Waterworks Purchaser, Mr. Scholzen does not use discretion or independent judgment in the execution of his duties and responsibilities.

16. Mr. Scholzen has gained institutional knowledge working for Defendant through the years, but his position as Waterworks Purchaser does not require knowledge of an advanced type in a field of service or learning customarily acquired by a prolonged course of specialized instruction and study.

17. Defendant intentionally mis-classified Mr. Scholzen as an "exempt" employee in order to avoid paying him overtime compensation-but at all times relevant herein, Mr. Scholzen performed the duties of an unexempt employee.

18. As a general rule, Mr. Scholzen has always worked 50 to 70 hours per week on behalf of Defendant.

19. Defendant was required to pay Mr. Scholzen 1 ½ times his regular hourly wage for each hour he worked in excess of 40 hours in a given workweek.

20. However, Defendant paid Mr. Scholzen a salary regardless of the number of hours he worked-but at the same time, deducted money from Mr. Scholzen's paycheck when Mr. Scholzen was sick even though Defendant offers 15 days' sick leave.

21. In August 2019, Mr. Scholzen deposited his paycheck as usual and sat down to pay his bills.

22. He was surprised to see that he did not have enough money, after he deposited his paycheck, to pay all of his bills.

23. Mr. Scholzen looked closer at his paystub and his commission report finding Defendant deducted $553.92 was from his salary and deducted $749.61 from his commission.

24. The deductions were intentionally concealed by Defendant and were made without any notice to or authorization from Mr. Scholzen.

25. Mr. Scholzen emailed Bruce Ballard (co-owner of Scholzen Products) and asked to meet with him to go over the discrepancies in his paycheck.

26. Ballard never responded.

27. In September 2019, Defendant again deducted money from Mr. Scholzen's paycheck without notifying Mr. Scholzen and without his consent.

28. $138.48 was deducted from Mr. Scholzen's salary and 206.01 was deducted from his commissions-but the paystub was altered to hide the deductions.

29. The deductions were intentionally concealed by Defendant and were made without any notice to or authorization from Mr. Scholzen.

30. Mr. Scholzen finally discussed the unauthorized deductions with Campos who told Mr. Scholzen something to the extent of "we are a corporation and that is how things are done."

31. Mr. Scholzen, suspicious of his other paychecks, asked Defendant for an accounting of his wages and commissions for October 2016 through November 2019.

32. Mr. Scholzen noticed the conversion of his wages and commissions had been happening since at least July 2017.

33. Mr. Scholzen calculated Defendant took an estimated $7,574.60 from Mr. Scholzen's wages between July 2017 and December 2019.

34. It is particularly curious that in July 2017, Defendant deducted $2,583.57 from Mr. Scholzen's wages without notice or prior approval but the $2,583.57 was included on Mr. Scholzen's year to date commissions. Mr. Scholzen also was required to pay taxes on that sum- although he never received it.

35. Defendant classified Mr. Scholzen as and "exempt" employee and paid him a monthly salary of $3,000 no matter how many hours of overtime he worked.

36. However, Defendant took money from Mr. Scholzen's wages and commissions if Mr. Scholzen used a sick day – this- even though Defendant's policies and procedures allowed 15 paid sick days per year and 15 paid vacation days per year.

37. Between March 2, 2017 and December 31, 2019, Mr. Scholzen worked approximately 850 hours of overtime-through working between 50 and 60 hours per workweek.

38. Defendant intentionally misclassified Mr. Scholzen as "exempt" in order to avoid paying him overtime.

39. Defendant was required to pay Mr. Scholzen 1 ½ times his regular hourly wage for each hour he worked in excess of 40 hours per workweek-but intentionally refused to do so.

40. Mr. Scholzen's average hourly wage between March 2017 and December 31, 2019 was 42.58 per hour.

41. Defendant was required to pay him $63.87 per hour for each of the 850 hours of overtime Mr. Scholzen worked-but refused to pay Mr. Scholzen.

42. Now, Defendant owes Mr. Scholzen approximately $54,289 for unpaid overtime and approximately $54,289.00 as liquidated damages due to Defendant's willful and intentional actions.

43. In January 2020, Defendant moved Mr. Scholzen from the $3,000 salary to an hourly wage of 14.10 per hour.

44. Mr. Scholzen's duties and responsibilities ad Waterworks Purchaser did not change.

45. Mr. Scholzen worked 27 hours of overtime in January 2020 and was entitled to receive 1 ½ times his hourly wage for each hour he worked in excess of 40 hours per workweek.

46. Defendant did not pay Mr. Scholzen overtime compensation for each hour he worked and instead, only paid Mr. Scholzen overtime wages for 12.5 hours.

47. Defendant owes Mr. Scholzen $$306.66 for unpaid overtime wages for January 2020.

48. Mr. Scholzen worked 40.5 hours of overtime in February 2020 and was entitled to receive 1 ½ times his hourly wage for each hour he worked in excess of 40 hours per workweek.

49. Defendant did not pay Mr. Scholzen overtime compensation for each hour he worked and instead, only paid Mr. Scholzen overtime wages for 14.5 hours.

50. Defendant owes Mr. Scholzen $539.33 for unpaid overtime wages for February 2020.

### FIRST CAUSE OF ACTION
*(Violation of the UPWA)*

51. The preceding paragraphs are incorporated herein by reference.

52. At all times relevant herein, Defendant was Mr. Scholzen's "employer" as that term is defined in the UPWA.

53. Defendant took money from Mr. Scholzen's wages without notice permission and without furnishing Mr. Scholzen a statement showing the total amount of each deduction, in violation of the UPWA, 34-28-3(4).

54. Defendant violated UPWA, §34-28-3(6)-(7) when it diverted funds owed to Mr. Scholzen without notice, consent or permission, including but not limited to diverting Mr. Scholzen's wages for the alleged fine owed to Ballard.

55. Defendant owes Mr. Scholzen reimbursement of the wages it unlawfully withheld in the approximate amount of $7,574.60 plus a civil penalty of an amount equal to 2.5% of the unpaid wages owed to the employee, assessed daily until final order of this Court is issued.

56. As a result of Defendant's violations of the UPWA, Mr. Scholzen is entitled to recover all reasonable attorneys' fees and costs in bringing this action.

57. As a result of Defendant's intentional and willful violations of the UPWA, Mr. Scholzen is entitled to awards of pre-judgment interest, post-judgment interest, punitive damages and all other damages recoverable under the provisions of the UPWA.

## SECOND CAUSE OF ACTION
### (Failure to Pay Overtime in Violation of the FLSA)

58. The preceding paragraphs are incorporated herein by reference.

59. At all relevant times herein, Defendant was an employer within the meaning of the FLSA.

60. Defendant engages in interstate commerce as defined in the FLSA and experienced annual gross sales in excess of $500,000 per year at all times relevant to this action.

61. At all relevant times herein, Mr. Scholzen was an "employee" of Defendant within the meaning of the FLSA.

62. At all times relevant herein, Defendant was responsible for paying wages to Mr. Scholzen.

63. At all times relevant herein, Mr. Scholzen has been an "employee" of Defendant within the meaning of the FLSA.

64. Under the FLSA, an employer must pay an employee at least one and one-half times his or her regular rate of pay for each hour worked in excess of forty hours per workweek.

65. Mr. Scholzen has been a non-exempt employee since November 1, 2016 and entitled to overtime wages of one and one-half times his regular hourly rate for each hour worked in excess of forty hours in a given work week.

66. Between March 2017 and December 31, 2019, Mr. Scholzen worked approximately 850 hours of overtime and was entitled to be compensated at 1 ½ times his hourly wage.

67. Defendant refused to pay Mr. Scholzen such overtime wages in violation of the FLSA.

68. Defendant intentionally misclassified Mr. Scholzen as an "exempt" employee in order to avoid paying him overtime wages earned over the last three years.

69. Mr. Scholzen is owed approximately $54,289 in unpaid overtime wages and is entitled to the same amount as liquidated damages for Defendant's violations through December 31, 2019.

70. In January 2020, Defendant changed Mr. Scholzen's wage from $3,000 per month to an hourly rate of $14.10 per hour.

71. Defendant's pattern and practice of refusing to pay overtime for each hour in excess of 40 hours per workweek is continuing.

72. Defendant has falsified Mr. Scholzen's pay records to make it appear he worked less overtime hours than he actually did.

73. In this regard, Mr. Scholzen worked 27 hours of overtime in January 2020.

74. Defendant did not pay Mr. Scholzen overtime wages for the 27 hours-and only paid him overtime compensation for 12.5 hours.

75. Defendant owes Mr. Scholzen his unpaid overtime compensation for 14.5 hours of work at the rate of $21.15 per hour for a total unpaid overtime in January of $306.66.

76. Defendant owes Mr. Scholzen $306.66 as liquidated damages for intentionally not paying overtime in violation of the FLSA.

77. Mr. Scholzen worked 40.5 hours of overtime in February 2020.

78. Defendant did not pay Mr. Scholzen overtime wages for 40.5 hours-and only paid him overtime compensation for 14.5 hours.

79. Defendant owes Mr. Scholzen his unpaid overtime compensation for 25.5 hours of work at the rate of $21.15 per hour for a total unpaid overtime in January of $539.33.

80. Defendant owes Mr. Scholzen $539.33 as liquidated damages for intentionally not paying overtime in violation of the FLSA.

81. As a result of Defendants' violations of the FLSA, Mr. Scholzen is entitled to recover all reasonable attorneys' fees and costs in bringing this action.

82. As a result of Defendants' intentional and willful violations of the FLSA, Mr. Scholzen is entitled to awards of pre-judgment interest, post-judgment interest, punitive damages and all other damages recoverable under the provisions of the FLSA.

## JURY DEMAND

Plaintiff requests trial by jury on issues so triable to jury pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant as follows:

a. For judgment against Defendant for each of his causes of action;

b. For compensatory damages, including pecuniary and non-pecuniary damages;

c. For liquidated damages in an amount proven at trial;

  d.  For prejudgment and post-judgment interest as applicable;

  e.  For attorney fees and costs of suit, including expert witness fees;

  f.  For punitive damages; and

  g.  For other such relief as is fair and equitable.

DATED this 2nd day of March 2020.

                /s/ Michele Anderson-West
                Michele Anderson-West
                STAVROS LAW, P.C.
                *Attorneys for Plaintiff*